IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RICHARD RIST;                    *
THE LARGE ART COMPANY
                                 *
          Plaintiffs
                                 *
          vs.                    CIVIL ACTION NO. MJG-12-3660
                                 *
XCENTRIC VENTURES, LLC;
DOES I-III                       *

          Defendants            *

*       *       *       *       *       *       *       *       *

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS

The Court has before it Defendant Xcentric Ventures, LLC's
Motion to Dismiss the Complaint for Lack of Juridiction [sic]
[Document 5] and the materials submitted relating thereto.  The
Court has reviewed the briefs and accompanying materials and
finds a hearing unnecessary.


I.     INTRODUCTION

At all times relevant hereto, (1) Plaintiff Richard Rist
("Rist"), a Maryland resident, has been the owner of Plaintiff
The Large Art Company ("LAC"), a Maryland corporation, and (2)
Defendant Xcentric Ventures, LLC ("Xcentric"), an Arizona
company, has operated a website known as the "Ripoff Report."

Rist has sued Xcentric and three John Doe Defendants for
publishing defamatory statements in the Ripoff Report.

By the instant motion, Xcentric seeks dismissal, contending that, with regard to claims against it, this District is not a proper venue, and this Court lacks personal jurisdiction over it.

## II. LEGAL FRAMEWORK

### A. Venue

"The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes." Albermarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 650 (4th Cir. 2010)(citing Rule[1] 12(b)(3), 28 U.S.C. § 1391, and 28 U.S.C. § 1406(a)).  When a Rule 12(b)(3) motion to dismiss is filed, the plaintiff bears the burden to establish that venue is proper in the judicial district in which the plaintiff has brought the action.  Jones v. Koons Auto., Inc., 752 F. Supp. 2d 670, 679-80 (4th Cir. 2010).

When considering a motion to dismiss for improper venue, a court must view all reasonable inferences and facts in the plaintiff's favor.  Id. at 680; CoStar Realty Info., Inc. v. Field, 612 F. Supp. 2d 660, 672 (D. Md. 2009).  However, the court is free to consider evidence outside the pleadings, unlike

---

[1] All Rule references herein refer to the Federal Rules of Civil Procedure.

under a Rule 12(b)(6) motion.  Sucampo Pharms., Inc. v. Astellas

Pharma, Inc., 471 F.3d 544, 549-50 (4th Cir. 2006).


B.    Personal Jurisdiction

When a defendant moves pursuant to Rule 12(b)(2) to dismiss

a complaint for lack of personal jurisdiction, the burden is on

the plaintiff "to prove grounds for jurisdiction by a

preponderance of the evidence."  Carefirst of Md., Inc. v.

Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir.

2003).

"If the existence of jurisdiction turns on disputed factual

questions the court may resolve the challenge on the basis of a

separate evidentiary hearing, or may defer ruling pending

receipt at trial of evidence relevant to the jurisdictional

question."  Combs v. Bakker, 886 F.2d 673 (4th Cir. 1989).

However, if the court decides to rule on the basis of the

complaint, affidavits, and discovery materials, without

conducting an evidentiary hearing, "the plaintiff need only make

a prima facie showing of personal jurisdiction," and the court

is to "take all disputed facts and reasonable inferences in

favor of the plaintiff."  Carefirst, 334 F. 3d at 396.

III. <u>DISCUSSION</u>

   A.   <u>Background</u>

   Xcentric's website, the Ripoff Report, allows registered users to post, free of charge, consumer complaints, called "Reports," against any business or individual located anywhere. The Ripoff Report is characterized as a "worldwide consumer reporting Website and publication by consumers and for consumers." Compl. ¶ 13, ECF No. 1. The website contains advertisements encouraging and soliciting users to submit Reports against companies and individuals that "rip them off."[2] These Reports can be viewed by anyone, free of charge. At present, it appears the Ripoff Report website contains approximately 700,000 Reports and millions of additional comments pertaining to companies and individuals in many locations. Mot. 2, ECF No. 5. About 8,300 (1.2%) of these Reports refer to Maryland residents and businesses.[3]

   Xcentric has a firm policy of never removing any Report from its database – regardless of whether a Report is claimed to contain defamatory statements or whether the original author

_____

[2] <u>E.g.</u>, an advertisement appearing next to each Report reads: "Victim of a Rip-off?  Don't get mad, get revenge!"  Compl. ¶ 13, ECF No. 1.
[3] Plaintiffs state that this information was obtained by using the Ripoff Report website's advanced search feature, which allows users to search for Reports by state.  Opp'n 3, ECF No. 6.

asks for it to be removed. Nor will Xcentric remove a Report for compensation. A rebuttal, however, is allowed to be posted, free of charge.

As discussed below, the parties present materially conflicting positions relating to the actions taken by Xcentric with regard to the content and presentation of the alleged defamatory statements made in the Reports. There is, however, no doubt that Xcentric offers services, for a fee, to those who are the subject of derogatory statements in Reports, i.e., arbitration and/or membership in a Corporate Advocacy Program ("CAP") to assist the subject of an adverse Report to repair its reputation. Six Maryland companies have become CAP members. Opp'n 3, ECF No. 6; Reply 2, ECF No. 8.[4]

Sometime prior to January 21, 2012, the three Reports at issue were posted on the website. These contained allegedly defamatory statements about Plaintiffs, for example:

> Large Art Company is operated by
> Richard Rist. He is a fraud and ripped us
> off and he disrespected the memory of our
> son. He sold us a piece of art that he
> claimed was manufactured in the U.S. and
> when we received the bronze it had a sticker
> on the bottom of it that said it was made in
> Mexico. . . . we were informed that Large

---

[4] Initially, Xcentric averred that no CAP customers were Maryland companies. In its Reply, it explained that the search had initially been conducted using the full name "Maryland," but when it modified the search to include "MD," the six companies were found. Reply 2, ECF No. 8.

>           Art had been ripping off their copyrighted
>           works and selling them . . . .

Compl. ¶ 33 (Armydog from New York).

>           A WARNING to bronze art and sculpture
>           buyers . . . a string of lies I was told to
>           when they began their attempted RIP OFF! . .
>           . Do not do business with this company
>           [LAC]; they will say whatever it takes to
>           get your money, then SCREW You . . . .

Compl. ¶ 47 (Vanessa from Maine).

>           LARGE ART IS STILL SELLING KNOCK OFFS .
>           . . . This company damages artists of their
>           [sic] reputation, integrity, income, since
>           many years and fools clients. . . .

Compl. ¶ 61 (Christin from Munich, Germany).

On January 31, 2012, Rist – having become aware of the Reports at issue - contacted Xcentric by email to ask about the arbitration services.  Opp'n, Ex. K, ECF No. 6-11. In response, Xcentric provided information about the arbitration services for which it charged a fee and suggested CAP (another fee-producing service) as another option.

Rist decided to eschew the offered fee-bearing services and to file a free rebuttal to one of the Reports.  The rebuttal appeared on the website following the Report posted by "Christin" from Munich, Germany, stated that the adverse statements in the Report were false, that Rist suspected that the Report was made by a competitor, and contained a link to the

Better Business Bureau record on LAC.  <u>See</u> Mot. Ex. 1, ECF No. 5-1.

The "author" of the Report, now identifying him/herself as "Impala – Bad Kohlgrub (Germany)," responded a few days later by reiterating the complaint that LAC sells knockoffs and including a link to <u>www.bronzecopyright.com</u>.  <u>Id.</u>

Rist then filed the instant lawsuit.  By the instant motion, Xcentric seeks dismissal contending that Plaintiffs are bound by a forum selection agreement and that it is not subject to the personal jurisdiction of this Court.

> B.   <u>Venue – Forum Selection Agreement</u>

Rist was required to check a box prior to posting his rebuttal, agreeing to the following provision:

> By posting this report/rebuttal, I attest this
> report is valid.  I am giving Rip-off Report
> irrevocable rights to post it on the website.  I
> acknowledge that once I post my report, it will not
> be removed, even at my request.  Of course, I can
> always update my report to reflect new developments
> by clicking on UPDATE.  Further, I agree that by
> posting the report/rebuttal that the State of
> Arizona has exclusive jurisdiction over any disputes
> between me and the operators of Rip-off Report
> arising out of this posting.

Mot. 5, ECF No. 5.

The Court will assume that Rist agreed to the provision. Nevertheless, the most reasonable, indeed the only reasonable, interpretation of the term "this posting" in the provision is as

a reference to the posting of the rebuttal.  Therefore, the

provision does not bind Rist or LAC with regard to the subject

matter of the lawsuit, the posting of the three Reports at

issue.

Accordingly, the Court finds the forum selection provision

does not render the District of Maryland an improper venue.


C.    Personal Jurisdiction

Xcentric is not a Maryland resident.  It has no property,

assets, employees, or registered agent in Maryland, and it is

not registered to do business in Maryland.

For a federal district court to exercise personal

jurisdiction over a nonresident defendant, two requirements must

be satisfied:

    1.    The exercise of personal jurisdiction must be
          authorized under the long-arm statute of the
          state in which the court is located; and

    2.    The exercise of jurisdiction must comport with
          the due process requirements of the Fourteenth
          Amendment.

ASCO Healthcare, Inc. v. Heart of Tx. HealthCare and Rehab.,
Inc., 540 F. Supp. 2d 634, 640 (D. Md. 2008).

Maryland's long-arm statute limits jurisdiction to cases

where the cause of action "aris[es] from any act enumerated" in

the statute itself.  Md. Code Ann., Cts. & Jud. Proc. § 6-

103(a).[5]  Thus, a plaintiff must identify the statutory provision

that authorizes jurisdiction.  Ottenheimer Publishers, Inc. v.

Playmore, Inc., 158 F. Supp. 2d 649, 652–53 (D. Md. 2001).

Plaintiffs in the instant case have identified the Maryland

long-arm statute, § 6-103(b)(1), (2), (3), and (4)[6] which

authorizes "general" and "specific" jurisdiction.

Maryland's long-arm statute has been interpreted as

extending to the constitutional limits of the Due Process Clause

of the Fourteenth Amendment.  Carefirst, 334 F.3d at 396-97.

Accordingly, the two inquiries essentially merge into a single

inquiry: does the defendant have "minimum contacts" with

Maryland, so that requiring the defendant to defend its

interests here "does not offend traditional notions of fair play

and substantial justice."  Id. (quoting Int'l Shoe Co. v.

Washington, 326 U.S. 310, 316 (1945)).  The nature of the claim

and the defendant's contacts with the state determine whether a

court may assert general or specific jurisdiction.

As stated by Judge Motz of this Court:

---

[5] All statutory references herein are to Md. Code Ann., Cts. &
Jud. Proc. unless otherwise indicated.
[6] See Compl. ¶ 6 (alleging jurisdiction under § 6-103(b)(1)-(3)).
Additionally, Plaintiffs state that by Xcentric's publishing
defamatory reports on Maryland residents and soliciting them to
remediate the effects, Xcentric's actions also fall squarely
within § 6-103(b)(4), which satisfies general jurisdiction.
Opp'n 14.

Under due process analysis, there are
two types of personal jurisdiction: specific
and general. Specific jurisdiction is
available when the plaintiff's claim arises
out of the defendant's contacts with the
forum state. General jurisdiction is
available only where the defendant's
contacts with the forum state are
"continuous and systematic." The level of
contacts required for the exercise of
general jurisdiction is "significantly
higher" than that required for the exercise
of specific jurisdiction.

Estate of Bank v. Swiss Valley Farms Co., 286 F. Supp. 2d 514,
517 (D. Md. 2003) (quoting Helicopteros Nacionales de Colombia
v. Hall, 466 U.S. 408, 414, 415 (1984), and ESAB Group, Inc. v.
Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997)).

     1.   General Jurisdiction

The Maryland long-arm statute provides as to general

jurisdiction, in pertinent part:

A court may exercise personal
jurisdiction over a person, who directly or
by an agent:

. . . .

(4) Causes tortious injury in the State or
outside of the State by an act or omission
outside the State if he regularly does or
solicits business, engages in any other
persistent course of conduct in the State or
derives substantial revenue from goods,
food, services, or manufactured products
used or consumed in the State;

§ 6-103(b)(4).

The Fourth Circuit has stated that "with regard to non-

residents, general jurisdiction is ordinarily reserved for those

defendants who have such substantial contacts with the forum state that they may be considered 'essentially domiciled' within that state." Estate of Bank, 286 F. Supp. 2d at 517-18 (quoting Atlantech Distribution, Inc. v. Credit Gen. Ins. Co., 30 F. Supp. 2d 534 (D. Md. 1998)). Certainly, general personal jurisdiction may not be found solely by virtue of Internet presence alone. Id. at 518.

Plaintiffs allege that Xcentric maintains much more than a simple Internet presence in Maryland; it solicits and conducts business in Maryland by publishing defamatory statements about Maryland residents and then soliciting them to remediate the effects by purchasing Xcentric services. Plaintiffs assert that these actions fall squarely within § 6-103(4).

Plaintiffs seek to rely upon Bass v. Energy Transp. Corp., 787 F. Supp. 530 (D. Md. 1992). In Bass, the court exercised general personal jurisdiction over the owner of a vessel on which a seaman was injured, even though the vessel owner's only contact with Maryland was through a union that maintained its principal office and training facility in Maryland. The court found this satisfied due process standards for "sufficiently extensive, continuous, and systematic" contacts with Maryland because the relationship was over a 15-year period, the union was the vessel owner's sole and exclusive bargaining

representative for all unlicensed seaman over that period, the vessel owner had hired all of its unlicensed seamen through the union for 14 years, and the union trained a substantial number of these seamen to the vessel owner's specifications in a Maryland training facility. Bass, 787 F. Supp. at 535 (quoting Goodyear Tire & Rubber Co. v. Ruby, 540 A.2d 482, 486 (Md. 1988)).

Xcentric's contacts with Maryland as alleged by Plaintiff do not approach a level comparable to that present in Bass. Only a small percentage of Reports relate to Maryland residents, there are only a few Maryland-based CAP customers, and there is nothing indicating that, as a general matter, Xcentric targeted Maryland residents. See, e.g., Robbins v. Yutopian Enters., Inc., 202 F. Supp. 2d 426, 429 (D. Md. 2002) (finding defendant's contacts with Maryland insufficient to conclude that it was "essentially domiciled" in Maryland and citing similar cases).

Accepting Plaintiffs' allegations as true and giving Plaintiffs the benefit of every reasonable inference, the Court cannot find that Xcentric's contacts with Maryland establish extensive, continuous, and systematic general business conduct sufficient to permit the exercise of general personal jurisdiction. Indeed, to accept Plaintiffs' position would

render Xcentric subject to general jurisdiction in virtually every State in which there resided any subject of an adverse Report.

The Court concludes that it lacks general jurisdiction over Defendant Xcentric.[7] Of course, the absence of general jurisdiction does not foreclose the presence of specific jurisdiction.

## 2. Specific Jurisdiction

The Maryland long-arm statute provides as to specific jurisdiction, in pertinent part:

> A court may exercise personal jurisdiction over a person, who directly or by an agent:
>
> (1) Transacts any business or performs any character of work or service in the State;
>
> (2) Contracts to supply goods, food, services, or manufactured products in the State;
>
> (3) Causes tortious injury in the State by an act or omission in the State;

§ 6-103(b)(1)-(3).

Xcentric's contacts with Maryland are through the Internet. As stated recently by the United States Court of Appeals for the Fourth Circuit:

---

[7] The Court further finds that no valid purpose would be served by permitting discovery regarding the general jurisdiction contention.

Personal jurisdiction over persons
conducting business on the Internet is
determined under a standard that has evolved
as necessary to accommodate the nature of
the Internet. That standard begins with the
principle that the Due Process Clause
prohibits a court from exercising personal
jurisdiction over a defendant unless that
defendant has certain minimum contacts such
that the maintenance of the suit does not
offend traditional notions of fair play and
substantial justice.  Such contacts exist
when a defendant purposely avails itself of
the privilege of conducting activities
within the forum State, thus invoking the
benefits and protections of its law. . . .
Thus, a defendant outside the forum State
must have at least "aimed" its challenged
conduct at the forum State.

Tailoring these principles to
electronic Internet activity, we have
adopted a three-part inquiry to determine
whether a defendant is subject to
jurisdiction in a State because of its
electronic transmissions to that State. The
inquiry considers:

(1) the extent to which the defendant
purposely availed itself of the privilege of
conducting activities in the State;

(2) whether the plaintiffs' claims arise out
of those activities directed at the State;
and

(3) whether the exercise of personal
jurisdiction would be constitutionally
reasonable.

Unspam Technologies, Inc. v. Chernuk, --- F.3d ----, 2013 WL
1849080, *5 (4th Cir. May 3, 2013) (internal citations and
quotation marks omitted).

The question is whether, in regard to the particular alleged defamatory statements at issue, the Court can exercise specific personal jurisdiction over Xcentric as distinguished from the authors of the subject Reports.

a.    Authors of Posted Reports

The Supreme Court in Calder v. Jones held that minimum contacts could be established for the purposes of finding specific jurisdiction where a defendant, although acting outside of the forum state, "intentionally directed his tortious conduct toward the forum state, knowing that the conduct would cause harm to a forum resident." Allcarrier Worldwide Servs., Inc. v. United Network Equip. Dealer Ass'n, 812 F. Supp. 2d 676, 681 (D. Md. 2011)(citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)). The Court emphasized that a finding of specific jurisdiction was not based on the mere foreseeability of a defamatory article's circulation and effects in the state, but because "their intentional, and allegedly tortious, actions were expressly aimed"[8] at the state.  Calder, 465 U.S. at 789.[9]

_____

[8] The Fourth Circuit reads the "express aiming" requirement "narrowly to require that the forum state be the focal point of the tort."  Cleaning Authority, Inc. v. Neubert, 739 F. Supp. 2d 807, 815 (D. Md. 2010).

15

Plaintiffs allege, and for present purposes,[10] the Court assumes, that each of the John Doe Defendants caused the publication on Ripoff Report of defamatory statements aimed at Plaintiffs (Maryland domiciliaries) with the intention of causing them harm in Maryland.  On these assumed facts, the Court would have personal specific jurisdiction over such a Defendant.

### b.  Defendant Xcentric

As stated above, the United States Court of Appeals for the Fourth Circuit has

> adopted a three-part inquiry to determine
> whether a defendant is subject to
> jurisdiction in a State because of its
> electronic transmissions to that State. The
> inquiry considers:
>
> (1) the extent to which the defendant
> purposely availed itself of the privilege of
> conducting activities in the State;
>
> (2) whether the plaintiffs' claims arise out
> of those activities directed at the State;
> and

---

[9] See also Unspam, 2013 WL 1849080, at *5 ("[A] defendant outside the forum State must have at least 'aimed' its challenged conduct at the forum State.").

[10] I.e., the instant motion filed by Xcentric without the participation of any John Doe Defendant.  Any contention that may be made by a John Doe Defendant shall be considered in due course.

> (3) whether the exercise of personal
> jurisdiction would be constitutionally
> reasonable.

Unspam, 2013 WL 1849080 at *5.

With regard to the first Unspam factor, purposeful avand, the instant case presents facts similar to, although not identical with, those presented in Hare v. Richie, Civil Action No. ELH-11-3488, 2012 WL 3773116 (D. Md. August 29, 2012).

In Hare, an Arizona-based defendant, Dirty World, LLC, published defamatory statements about a Maryland resident on its Internet website entitled "thedirty.com." In Hare, decided prior to Unspam, the Court found the Defendants to have purposely availed themselves of the privilege of conducting activities in the State, stating:

> In sum, this is not a case where
> personal jurisdiction is based solely on the
> posting of information on a website that
> happens to be accessible in Maryland.
> Rather, this case involves information
> posted on a website that specifically
> targets a Maryland audience. In the words of
> [ALS Scan, Inc. v. Digital Service
> Consultants, Inc., 293 F.3d 707, 714 (4th
> Cir. 2002)], Dirty World "directs electronic
> activity into the State" of Maryland, and
> does so "with the manifested intent of
> engaging in business or other interactions
> within the State," thus satisfying the first
> two prongs of the adapted Zippo[11] analysis.

--------

[11] Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997), substantially adopted in ALS Scan, 293 F.3d at 714.

> Moreover, the third prong is also satisfied, because the electronic activity that forms the basis of the jurisdictional contacts also forms the basis of Dirty World's alleged liability: the activity "creates, in a person within the State, a potential cause of action cognizable in the State's courts." For the foregoing reasons, I conclude that Dirty World possesses the requisite minimum contacts with Maryland to constitute purposeful availment.

<u>Hare</u>, 2012 WL 3773116 at *12.

The Court finds that the question of whether, with respect to the specific claims at issue in the instant case, Xcentric purposefully availed itself of the privilege of conducting business in Maryland, presents issues that require a more complete record for resolution.

For example, there are disputes as to the details, and conclusions to be drawn, relating to Xcentric's participation in changing, or adding to, Reports presented for publication by an author. Plaintiffs allege that Xcentric does more than just publish Reports written by others but also adds original content prior to publication. Compl. ¶ 23. This is accomplished through prompting for specific information and requiring the user to select a category from an Xcentric list, which includes "Con Artists" and "Liars." Compl. ¶ 24. Xcentric also creates metatags, which are read by search engines and used to create the title page by adding the content "Rip-off Report" to the

beginning of the title that was created by the Report's writer.
Compl. ¶ 26-30. Plaintiffs add that Xcentric surrounds the
postings with commentary such as, "Don't let them get away with
it...let the truth be known!" that enhances the negative impact
of the content in the Report. Compl. ¶ 31. Xcentric avers that
the audit logs of the three reports confirm that there were no
changes to the content between what was submitted by the user
and what appears on the website. Mot. Ex. B, ECF No. 5-2.

There are also disputes regarding the import of Xcentric's
direct solicitation or offering of fee-producing services to
those – such as Plaintiffs – who have been the subject of
derogatory Reports. Xcentric's business practice in this regard
may be, but not necessarily would be, found to provide an
incentive for it to augment the negative aspects of a Report so
as to promote a need for its fee-producing services by the
specific subjects.

There is no doubt that Plaintiffs have satisfied the second
Unspam factor. Plaintiffs' claims arise out of the particular
activities (publication of the Reports at issue) that were
directed at Maryland.[12]

The record does not present a basis to hold that the
exercise of specific personal jurisdiction over Xcentric would

_____

[12] Of course, the Court is not now addressing the substantive
merits of Plaintiffs' claims.

not be constitutionally reasonable.  <u>See, e.g.</u>, <u>Hare</u>, 2012 WL 3773116 at *12-13.

The "bottom line," based on the current record, in the absence of an evidentiary hearing and findings of fact, is that Plaintiffs have made a <u>prima facie</u> showing of specific personal jurisdiction sufficient to avoid dismissal.  However, the Court will afford Xcentric the opportunity to renew its motion and request an evidentiary hearing and findings of fact.


IV.  <u>CONCLUSION</u>

For the foregoing reasons:

1.  Defendant Xcentric Ventures, LLC's Motion to Dismiss the Complaint for Lack of Juridiction [sic] [Document 5] is DENIED WITHOUT PREJUDICE TO RENEWAL WITH A REQUEST FOR EVIDENTIARY HEARING.

2.  Any renewed motion shall be filed by June 28, 2013.

    a.  The renewed motion may be stated briefly, without a supporting memorandum, as simply renewing the aforesaid motion with a request for evidentiary hearing.

    b.  Plaintiffs need not respond to the renewed motion and shall be deemed to oppose it.

    c.  Plaintiffs shall arrange a telephone conference regarding the scheduling or proceedings, including any necessary discovery, relating to the renewed motion.

3.    In the absence of a renewed motion, Plaintiffs shall arrange a telephone conference to be held by July 12, 2013 to discuss the scheduling of further proceedings herein.

SO ORDERED, on <u>Thursday, June 13, 2013</u>.


_____/s/_____
Marvin J. Garbis
United States District Judge